IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EDDIE SARDON,  )
B03076,  )
 )
        Plaintiff,  )
 )
vs.  )
 )          Case No. 24-cv-2565-DWD
CHAD JENNINGS,  )
NICHOLE DUNLAP,  )
C. OSBORNE,  )
K. YOCUM,  )
 )
        Defendants.  )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Eddie Sardon, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Robinson Correctional Center (Robinson), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff's initial complaint and motion for a preliminary injunction were dismissed as insufficiently vague. (Doc. 6). Plaintiff has now filed a timely amended complaint and second motion for a temporary restraining order and preliminary injunction concerning his access to a weekly religious publication.

Plaintiff's Amended Complaint (Doc. 13) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim

upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE AMENDED COMPLAINT

Plaintiff alleges that he has filed a complaint to pursue his rights under the First Amendment and RLUIPA (Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a), et al.) concerning his ability to observe his religion while incarcerated.  (Doc. 13 at 8).  He describes himself as a follower of the Nation of Islam, and indicates that since February or April of 2023, he has been unable to secure access to the "Final Call," a weekly religious publication.  (Doc. 13 at 8).  He describes the publication as containing teachings and sermons of Elijah Muhammad (the founder of the Nation of Islam) and Louis Farrakhan (a minister and claimed representative of Muhammad).  (Doc. 13 at 12).  Plaintiff claims that the "weekly receipt and teachings of Elijah Muhammad serve as weekly religious service," which he has been denied.  (*Id.* at 12).

Plaintiff claims that he does not complain of some isolated delay or sporadic interruption, and he instead insists that he has experienced a permanent withholding of the publication to this day.  (Doc. 13 at 9).  He explains that although he cannot provide precise information about the dates or individuals involved in withholding his publications, he believes that Defendants Osborne, Yocum, and Dunlap are involved with his access to the desired publication because their names have come up in response to

grievances he has filed about access to the publication wherein counselors or grievance

officers have indicated that the three are responsible for processing mail. (Doc. 13 at 9-

11). Thus, he claims that over the last two years interruptions with his access to the

publication or the total withholding of the publication can be attributed to a custom or

routine practice of Defendants Dunlap, Yocum, and Osborne. He further alleges that

Defendant Warden Chad Jennings has "actual knowledge of the custom and practice"

but has done nothing to end the practice. (Doc. 13 at 11).

Plaintiff alleges that he has not received any notification from "publication

review" or mailroom staff explaining why his publications have been withheld. (Doc. 13

at 11). At most, he learned from a counselor that the mailroom was understaffed. He

claims that given the ineffectiveness of grievances to resolve his issues, he is left with no

other option than litigation. (Doc. 13 at 11). He claims that without his weekly

publications he has suffered and will continue to suffer irreparable harm because the

receipt and reading of the materials is akin to weekly religious services. (Doc. 13 at 12-

13).

In the Second Motion for a Temporary Restraining Order and Preliminary

Injunction Plaintiff asks for a temporary restraining order directing the defendants to hire

more mailroom staff, and for a preliminary injunction requiring the defendants to stop

withholding his Final Call publications. (Doc. 11 at 1). Plaintiff contends he is likely to

succeed on the merits of his claims because they are a classic example of unconstitutional

behavior by prison employees. (Doc. 11 at 6-7). He argues that he faces irreparable harm

because his inability to access the religious texts is more than just a plain right to read

issue and is instead a substantial burden on his ability to express his religious beliefs.

(Doc. 11 at 5).  He contends that the ongoing burden for him is "enormous" whereas the

burden for the defendants is non-existent because hiring more mailroom staff and

delivering his publications is "business as usual."  (Doc. 11 at 6).  Finally, Plaintiff argues

that injunctive relief will serve the public interest because it is always in the public interest

for prison officials to follow the law.

Based on the allegations in the Amended Complaint, the Court designates the

following counts:

> **Claim 1:**     **First Amendment religious exercise claim against Defendants Jennings, Dunlap, Osborne, and Yocum for their role in denying or delaying Plaintiff's access to his weekly Final Call publication from February 2023 to date (January 2025);**

> **Claim 2:**     **RLUIPA claim against Defendant Jennings for Plaintiff's delayed access, or total deprivation of his weekly Final Call publication from February of 2023 to date (January 2025);**

The parties and the Court will use these designations in all future pleadings and orders

unless otherwise directed by a judicial officer of this Court**.**  Any claim that is mentioned

in the Complaint but not addressed in this Order is considered dismissed without

prejudice as inadequately pled under *Twombly*.  *See Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does

not plead "enough facts to state a claim that is plausible on its face").

<u>Analysis</u>

An inmate's right to practice his religion is protected under the First Amendment,

and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §

2000cc-1(a).  "The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotation marks and citations omitted). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379-80 (7th Cir. 2016) (citation and internal quotation marks omitted).  RLUIPA offers broader protections than the First Amendment by prohibiting substantial burdens on an inmate's religious exercise unless that burden serves a "compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see also Cutter v. Wilkinson*, 544 U.S. 709 (2005). However, RLUIPA does not allow money damages against state officials, and instead allows for only injunctive relief. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011).

Plaintiff alleges that Defendants Osborne, Yocum, and Dunlap must be participating in or responsible for delaying or denying his access to weekly Final Call publications because their names came up as mailroom employees during his attempt to resolve his access issues via the grievance procedure.  He explains that he believes these three have a custom or policy of routinely depriving him of his publication, claiming he has not received any copies since February of 2023.  Plaintiff attached grievances to his complaint that cut both for and against his assertions.  For example, in an April 9, 2024, grievance he complained he was experiencing delays accessing the Final Call newspaper, indicating he received a late-February 2024 issue on March 19, 2024, and another on April 2, 2024.  (Doc. 13 at 22-23).  He also indicated in that same grievance that there were issues

that had not been delivered at all at the time he wrote it, and in earlier grievances he indicated he went weeks at a time without receiving issues (Doc. 13 at 16-17, 20). In an April 2023, grievance response he was informed the mailroom was understaffed and was processing mail on a first come first serve basis, with some publications being diverted to "publication review." (Doc. 13 at 18). In April of 2024, he was informed that he did not have mail in publication review, and that one of his publications had just been received and would be forwarded to him the same day. (Doc. 13 at 21). He was further informed in October of 2024 that if mail was confiscated, he would receive a notification. (Doc. 13 at 25). Against this backdrop, it remains unclear the exact nature of the deprivation that Plaintiff has suffered, or who may hold responsibility for the issue at hand, but the Court will accept Plaintiff's assertion that the mailroom employees who participated in responding to his grievances at least appear to have functional control over the mailroom and flow of mail, and thus may be the appropriate defendants for a First Amendment claim related to Plaintiff's access to his religious texts arriving via mail.

To the extent that Plaintiff discusses his access to the Final Call weekly publications as a matter of custom or policy at the prison, language of this nature is akin to a *Monell* claim. To prevail on his *Monell* claim, Plaintiff "must eventually show that (1) he suffered a deprivation of a constitutional right; (2) as a result of an express policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that was; (3) the cause of his constitutional injury." *Shields v. City of Chi.*, No. 12 C 6689, 2018 WL 1138553, at *3 (N.D. Ill. Mar. 2, 2018) (*citing Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017)). While *Monell* claims are not subject to a heightened

pleading standard, *see White v. City of Chi.*, 829 F.3d 837, 843–44 (7th Cir. 2016), the Seventh

Circuit requires that a plaintiff plead "factual content that allows the court to draw the

reasonable inference" that the defendant maintained a policy or custom that caused the

alleged constitutional deprivation. *McCauley v. City of Chi.*, 671 F.3d 611, 615 (7th Cir.

2011) (*quoting Iqbal*, 556 U.S. at 678).  Mere "legal conclusions or elements of the cause of

action" must be disregarded.  *Id.* at 617.  Although *Monell* claims "may proceed with

conclusory allegations of a policy or practice, some facts must be pleaded to put the

defendant on notice of the alleged wrongdoing."  *Taylor*, 2016 WL 3227310, at *4.

Here, the Court is not persuaded that Plaintiff has plausibly suggested a harmful

policy or custom as opposed to isolated problems.  While he argues that his situation is

more than just a limited or isolated act of wrongdoing, the grievance responses suggest

that delays in access to incoming mail have not been because of any set policy or custom

and instead have been impacted by the volume of inflow of mail and the staffing of the

mailroom.  Blatantly asserting that there is a hidden policy or custom is not enough.

Surely there is not a policy to intentionally understaff the mailroom to delay incoming

mail.  From the grievance responses it appears that sometimes mail was being processed

quicker than others, and sometimes his publications were never delivered while other

times they were delivered at a slight to a modest delay from arrival at the prison.  This

conflicting evidence makes it unlikely that there is a rigid custom or policy dictating the

situation.  Thus, the Court will not allow Plaintiff to proceed under the First Amendment

against the Defendants on the theory that they have a custom or policy that has impacted

his access to mail.  This means that Plaintiff may proceed on Claim 1 against Defendants

Osborne, Yocum, and Dunlap for their alleged personal roles in mail handling, but not against Defendant Jennings for his alleged general knowledge of a custom or practice.

As to Plaintiff's assertions under RLUIPA, he has plausibly alleged that the inability to access his weekly Final Call newsletter is akin to the deprivation of weekly religious services and is a substantial burden on his religious observance. Warden Chad Jennings, as the official overseeing operations at the prison, has both the authority and the responsibility to ensure that inmates have the ability to observe their religion as contemplated by RLUIPA. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Accordingly, the Court will allow the RLUIPA claim to proceed against Defendant Jennings. The other defendants are duplicative of Jennings in this sense, so Defendants Osborne, Yocum, and Dunlap will be dismissed from Claim 2 without prejudice. *See e.g., Clay v. Indiana Dept. of Corr.*, 2020 WL 3791595 at *2 (N.D. Ind. July 7, 2020) (allowing an inmate to proceed on a RLUIPA claim against a Warden and dismissing all other defendants).

### SECOND MOTION FOR A PRELIMINARY INJUNCTION

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and irreparable harm without the injunctive relief. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). As for the first requirement, the Court must determine whether "plaintiff has any likelihood of success— in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). "A movant's showing of likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020)

(quotation marks omitted).  A "better than negligible" likelihood of success is not enough.

*Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762−63 (7th Cir. 2020).  "A 'strong' showing

... does not mean proof by a preponderance .... But it normally includes a demonstration

of how the applicant proposes to prove the key elements of its case." *Id.*

The Court must also decide whether an adequate remedy at law exists and

whether the plaintiff will suffer irreparable harm without injunctive relief.  Irreparable

harm is harm which cannot be repaired. *Graham v. Med. Mut. Of Ohio*, 130 F.3d 293, 296

(7th Cir. 1998) ("Irreparable harm is harm which cannot be repaired, retrieved, put down

again, atoned for.  The injury must be of a particular nature, so that compensation in

money cannot atone for it.").  The Court must then weigh "the balance of harm to the

parties if the injunction is granted or denied and also evaluate the effect of an injunction

on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013).  "This

equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of

success of the merits, the less heavily the balance of harms must tip in the moving party's

favor." *Korte*, 735 F.3d at 665.  An injunction that seeks an affirmative act by the

respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays*,

974 F.3d at 818.  If injunctive relief is warranted, the Prison Litigation Reform Act

provides that the injunction must be "narrowly drawn, extend no further than necessary

to correct the harm . . . ," and "be the least intrusive means necessary to correct that

harm." 18 U.S.C. § 3626(a)(2).

Here, Plaintiff seeks injunctive relief mandating the prison to immediately hire

additional mailroom staff and mandating the prison to restore his access to his weekly

Final Call publication. He has styled his motion as requesting the additional staffing in the form of a "temporary restraining order," and the access to his publication in the form of a preliminary injunction. A temporary restraining order can only last for 14 days absent an extension, but any addition of staffing would likely be desirable for much longer than 14 days, so the Court finds a temporary restraining order to be a misfit for the actual relief Plaintiff seeks. Fed. R. Civ. P. 65(b)(2). The Court will instead construe both requests as requests for preliminary injunctions.

The Court finds at this very initial stage of review that Plaintiff's allegations about his access to the weekly Final Call publication are sufficient to warrant a response from the Defendants. This is not a determination that Plaintiff is likely to succeed on the merits of his claim. The Court will more thoroughly analyze that factor, and other elements necessary for a preliminary injunction once it has the benefit of briefing from the Defendants. Thus, the Defendants are **DIRECTED** to respond to Plaintiff's Motion (Doc. 11) within 21 days of counsel entering an appearance in this case on their behalf.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint survives initial screening as described above against Defendants Dunlap, Osborne, and Yocum, and **Claim 2** survives against Defendant Chad Jennings.

A ruling on the Motion for a Preliminary Injunction (Doc. 11) will be **DEFERRED** until briefing is completed. The Defendants are **DIRECTED** to respond to the Motion for a Preliminary Injunction **within 21 days** of returning executed waivers of service in this case.

The Clerk of Court is **DIRECTED** to prepare for Defendants Chad Jennings (official capacity), Nichole Dunlap, C. Osborne, and K. Yocum: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 13), a copy of this Order, and a copy of the Second Motion for a Preliminary Injunction (Doc. 11). If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs,

regardless of whether his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

Dated: January 13, 2025

/s *David W. Dugan*

_____
DAVID W. DUGAN
United States District Judge

**Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.