**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| EDDIE SARDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 24-cv-2565-DWD |
| | ) | |
| CHAD JENNINGS, | ) | |
| NICHOLE DUNLAP, | ) | |
| C OSBORNE, | ) | |
| K YOCUM, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

**DUGAN, District Judge:**

Plaintiff Eddie Sardon, a former inmate of the Illinois Department of Corrections (IDOC) brought this action while incarcerated pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Robinson Correctional Center (Robinson). The Court designated two claims to proceed concerning Plaintiff's access to a religious publication—the Final Call newsletter. The Defendants filed a Motion for Summary Judgment (Doc. 50), Plaintiff responded (Doc. 63), Defendants replied (Doc. 64), and Plaintiff has filed a sur-reply (Doc. 65). For reasons explained herein, Plaintiff may proceed on Claim 1 against Defendants Yocum, Dunlap, and Osborne, but he may not proceed on Claim 2 against Defendant Jennings.

The Defendants' Motion for an Extension of Time to file their Motion for Summary Judgment on the issue of exhaustion (Doc. 49) is granted instanter. Additionally,

Plaintiff's Motion for Leave to File a Sur-Reply (Doc. 66) is granted, and the sur-reply was considered.

## BACKGROUND

Plaintiff transmitted his initial complaint on December 5, 2024 (Doc. 1 at 8), which the Court deemed insufficient to state a claim (Doc. 6), and he transmitted his amended complaint on January 3, 2025 (Doc. 10 at 14).

The Court allowed Plaintiff to proceed on the following claims:

**Claim 1:** **First Amendment religious exercise claim against Defendants Dunlap, Osborne, and Yocum for their role in denying or delaying Plaintiff's access to his weekly Final Call publication from February 2023 to date (January 2025);**

**Claim 2:** **RLUIPA claim against Defendant Jennings for Plaintiff's delayed access, or total deprivation of his weekly Final Call publication from February of 2023 to date (January of 2025).**

(Doc. 14).

The parties undertook discovery on the exhaustion of administrative remedies, and in doing so they have identified a handful of grievances relevant to the claims in this case.

## FINDINGS OF FACT

On April 3, 2023, Plaintiff filed grievance 23-0391 wherein he alleged that he had a subscription to the Muslim newspaper The Final Call, but that he had not received his newspaper in weeks. (Doc. 50-2 at 32-33). The counselor indicated the mailroom was understaffed, was distributing mail on a first come first serve basis and had to divert some mail through a publication review process. (*Id.* at 32). The grievance officer

indicated that mail shall be delivered promptly after necessary inspections for contraband and that mail sent through publication review would be distributed once approved. (*Id.* at 31). Based on this response, the grievance officer recommended denial of the grievance and the warden concurred on April 27, 2023. (*Id.*). On July 24, 2023, the ARB officer concurred with the denial and noted that the newspaper issue could not be substantiated. (*Id.* at 28). The IDOC director concurred. (*Id.*).

On January 31, 2024, Plaintiff submitted another grievance (K42-0224-0309) alleging he was experiencing serious and ongoing delays with the receipt of the Final Call newspaper. (Doc. 13 at 20). The grievance officer indicated that per C. Osborne mail is processed in the order it is received, and plaintiff's publication was not in publication review. (*Id.*). The grievance officer indicated that consistent with the counselor's response, Osborne indicated mail was distributed in the order received, and law librarian N. Dunlap indicated the newspaper was not in publication review. (Doc. 13 at 21). The grievance officer also consulted K. Yocum, who reported that at the time of the grievance response mail was about a week behind, and that on April 22, 2024, one of the newspapers was received and would be distributed. (*Id.*). Based on this information the grievance officer recommended the grievance be "mixed, partially affirmed" because mail would be processed and distributed as received. (*Id.*). The Warden concurred on April 29, 2024. There is no indication from Plaintiff or Defendants that this grievance was appealed.

Plaintiff submitted another grievance on April 9, 2024, concerning the mailroom and delays. (Doc. 10 at 22). It appears that the grievance office marked this as "aggregated" and combined this grievance with the then pending grievance K42-0224-

0309).  In the April 9, 2024, grievance, Plaintiff alleged there is an ongoing practice of excessive delay and non-delivery of his mail.  He alleges newspapers arrived in February and March of 2024 that were issued at a great delay or were never issued at all.  (*Id.* at 23).  Plaintiff further alleged that he had filed grievances such as grievance 23-0391, but nothing was being done by counselors, grievance officers, or administrators.  (*Id.*).

On July 29, 2024, Plaintiff filed grievance number K42-0724-149 wherein he indicated he was realleging everything from grievances 23-0391 and K42-0224-0309, and three other dated but unnumbered grievances.  (Doc. 50-2 at 3).  He alleged that K. Yocum provided incorrect information in response to grievance K42-0224-0309 because she said a publication was received and would be sent to him, but he did not receive a publication that aligned with that notification.  (Doc. 50-2 at 3-4).  He further alleged that he had now been experiencing delayed access to the Final Call for over a year, and he listed many discrete dates of delayed delivery.  (*Id.* at 4).  In response the grievance officer indicated that Yocum had no recollection of a prior conversation or exchange with Plaintiff.  (*Id.* at 2).  Yocum further indicated without USPS tracking numbers, more detailed information about incoming mail was not available, but that mail was processed in the order received and was promptly delivered.  (*Id.*).  The grievance officer indicated the grievance was "mixed" in that it was partially affirmed, but was also without merit because it concerned mail delivery issues that had already been addressed in prior grievances and for which there was no further information.  (*Id.*).  On October 4, 2024, the Warden affirmed this grievance ruling.  (*Id.*).  On November 6, 2024, the ARB returned the grievance to Plaintiff with a form that indicated the issue was previously addressed on July 24, 2023, and a

notation that "Grievance #23-0391 was already answered by this office.  It is inappropriate to file a new grievance on an already filed grievance[.]"  (Doc. 10 at 26).

CONCLUSIONS OF LAW

### A.  Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust.  *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).[1]  After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust.  *Wilborn v. Ealey*, 881 F.3d 998, 1004

---

[1]  The Supreme Court's recent opinion in *Perttu v. Richards*, 605 U.S. 460 (2025), held that if the facts necessary for a ruling on exhaustion are intertwined with the merits of the claim, a jury trial is required. But the *Perttu* Court did not go so far as to extend the Seventh Amendment right to a jury trial to all exhaustion disputes.  In this case, there is no intertwinement of the facts, so *Perttu* does not require that this issue be determined at a jury trial.

(7th Cir. 2018).  The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal.  *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017)*.

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies.  42 U.S.C. § 1997e(a); *Pavey, 544 F.3d at 740*.  "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).  For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require."  *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).  "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies."  *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code.  20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Section 504.810(c) requires that a grievance state: "what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible."  An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO.  20 ILL. ADMIN. CODE § 504.840.  If it is determined that there exists a substantial risk of imminent personal

injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* If an inmate is appealing a grievance that the CAO determined to be of an emergency nature, then the ARB shall expedite processing of the appeal. 20 ILL. ADMIN. CODE § 504.850(f). Section 504.870(a) provides that offenders can submit grievances directly to the ARB concerning protective custody placement, disciplinary proceedings at a facility other than the facility where the offender is currently assigned, and all other issues about a facility other than the offender's current facility (except for personal property and medical issues).

**B. Analysis**

As an initial matter, neither the Defendants nor Plaintiff make any meaningful delineation in their exhaustion arguments about Claim 1 versus Claim 2. Claim 1 sounds under the First Amendment and pertains to Defendants Dunlap, Yocum, and Osborne.[2] Claim 2 sounds under RLUIPA, and it was designated to proceed at § 1915A review against Warden Chad Jennings in his official capacity because Warden Jennings would

---

[2] The Defendants incorrectly indicate in their motion that Claim 1 includes Defendant Jennings, but the Court dismissed Defendant Jennings from Claim 1 upon initial review. (Doc. 14).

have been the appropriate party to implement injunctive relief under RLUIPA.[3] However, since the filing of this lawsuit Plaintiff has been released from prison and there is no suggestion he is likely to return.  (Doc. 14 at 8).  Plaintiff's release from prison makes him ineligible for injunctive relief under RLUIPA, so Claim 2 will now be dismissed with prejudice and Warden Jennings will be terminated as a party in this action.  *See e.g.,* *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) (noting that RLUIPA authorizes injunctive relief, but that an inmate's release from prison moots his eligibility for injunctive relief).

Turning solely to Claim 1, the Defendants argue that this claim is not exhausted because grievance 23-0391 did not name them or describe their personal involvement in a wrong.  (Doc. 50 at 7-8).  They further argue that grievance K42-0724-1496 does not exhaust Plaintiff's claims because it was rejected as a no-merit grievance and a procedurally defective grievance cannot satisfy the exhaustion requirement of the PLRA. (Doc. 50 at 9).  To the extent other grievance dates were mentioned, they argue that the ARB never received appeals of grievances submitted on January 25, 2024, January 31, 2024, or April 9, 2024.  (*Id.*).  Thus, they contend Plaintiff did not satisfy the PLRA's exhaustion requirement, and this case must be dismissed.

---

[3] On June 23, 2026, the Supreme Court reiterated that money damages cannot be sought from individual prison employees under RLUIPA, though the Court left open the question of whether RLUIPA ever permits money damages. *Landor v. Louisiana Dept. of Corr. and Public Safety*, 609 U.S. --, 146 S.Ct. 1931, 1939 (June 23, 2026).  Upon initial review of the Amended Complaint in this case, the Court allowed Plaintiff to proceed against Warden Jennings in official capacity for injunctive relief (Doc. 14), so the open question about money damages need not be resolved here.

In response, Plaintiff argues that grievance 23-0391 properly alerted the prison to issues with his Final Call religious publication and was exhausted at all levels. He contends that the grievance gave adequate notice of the problem. (Doc. 63 at 4). He also argues that remedies are unavailable if they do not provide relief. (*Id.*). Plaintiff does not link his unavailability argument to any of his specific grievances or to the Defendants motion. Plaintiff also mentions a continuing violation in a section of his brief that he titled "issue preservation for appellate review," and he rhetorically questioned if he was required to file repeat grievances for an ongoing issue. (*Id.* at 5). He further questioned whether remedies were available if his problem persisted and the grievance process provided no relief. (*Id.*).

The Defendants cite just two sources of authority for their contention that grievance 23-0391 did not adequately identify them for purposes of exhaustion. First, they indicate that the Illinois Administrative Code requires a grievance to include as much descriptive information as possible about those involved in the alleged wrong. 20 Ill. Admin. Code § 504.810(c). Second, they cite *Garcia v. Alfonso*, 2024 WL 4527716 (S.D. Ill. Oct. 18, 2024) for the proposition that the contents of a grievance must give some identifying information about the accused so that the prison can investigate and resolve issues.[4] Neither of the Defendants' cites are persuasive.

---

[4] In *Garcia*, the undersigned found that the plaintiff's sole exhausted grievance about pre-surgical care for an Achilles injury that named a single doctor was not sufficient to exhaust the plaintiff's claims about post-surgical care by the same doctor or by a nurse who was not named and who allegedly did not help with athletic shoes or other care after surgery. The Court reasoned that the pre-surgery grievance did not give the prison any identifying information about the nurse that could have been used to investigate and resolve an issue related to her actions. This case is distinct from *Garcia* because Plaintiff's grievances all pointed to the core issue that his religious newspaper was not being delivered, and the prison contacted or identified Osborne, Yocum, and Dunlap in the process of reviewing Plaintiff's grievances about the newspaper so the

The Seventh Circuit does not zealously enforce IDOC's administrative rules that require a grievance to name all responsible individuals, instead emphasizing that the true purpose of a grievance is to alert a prison to a problem so that it can be addressed. *See e.g., Maddox v. Love,* 655 F.3d 709, 721-22 (7th Cir. 2011) (finding that a grievance about religious services that did not name the chaplain and warden was sufficient for exhaustion because it was addressed on the merits at all levels of review and the chaplain and warden were involved in the substantive response); *Glick v. Walker*, 385 Fed. App'x 579, 582-83 (7th Cir. 2010) (finding that two grievances that clearly described issues without employee names, and that were substantively assessed at each level of the grievance process, were sufficient for exhaustion because the PLRA does not have a strict "name all defendants" mandate); *Williams v. Luking*, 2023 WL 317663 at * 5 (S.D. Ill. Jan. 19, 2023) (finding that an inmate's grievance that reasonably described deficient medical care, included a consultation of relevant medical professionals in the response process, and was exhausted at all levels, was sufficient for exhaustion even if it did not contain the names of prison officials). In the *Maddox* case, an inmate grieved about access to religious services but did not name any particular prison employees in the grievance. Maddox later filed a lawsuit against the prison's warden and chaplain. The *Maddox* Court rejected the defendants' contention that he failed to exhaust claims against them by failing to name them in the grievance, instead finding that the grievance clearly alerted

---

prison clearly knew or suspected the issue could be stemming from the prison's mailroom. Thus, unlike *Garcia* where the prison was not alerted in any way to post-surgical issues with the nurse, the prison in this case was on alert about the newspaper delivery issue.

the prison to the wrong at issue and gave the prison a chance to address the issue on the merits. 655 F.3d 709, 721-22.

Plaintiff's situation in the present case is aligned with *Maddox*. Plaintiff filed a grievance about slow mail delivery of his religious publication and did not initially know who may be responsible. Plaintiff's lack of identifying an individual did not stop the counselor, grievance officer, warden, or ARB from addressing the merits of grievance 23-0391. Instead, the grievance was reviewed at all levels and was "denied" with the response that mail would be delivered promptly or diverted to publication review and delivered after approved. (Doc. 50-2 at 31). Plaintiff did not find this result satisfactory, so he continued to pursue additional grievances seeking recourse before resorting to this lawsuit. In the process of pursuing those grievances, none of the officials in the processing chain ever raised Plaintiff's failure to provide a name as a barrier. In fact, it appears that Plaintiff learned the names of the eventual defendants because prison officials referred to Yocum, Osborne, and Dunlap in their responses to Plaintiff's grievances as individuals who possessed relevant information concerning the delivery of his religious publications. Against this backdrop, it cannot be said that grievance 23-0391 failed to alert the prison to a problem with an opportunity to provide a solution. Like the grievance in *Maddox*, Plaintiff's grievance gave the prison enough notice of the issue to satisfy the exhaustion requirement.

Defendants also argue that grievance K42-0724-1496 is not adequate for exhaustion purposes because the prison and ARB rejected this grievance on procedural grounds. They argue that the Illinois Administrative Code allows a grievance to be

deemed a "no merit grievance" if it raises an issue already resolved in a prior grievance. 20 Ill. Admin. Code § 504.830(a)(1) ("grievances on issues that are deemed without merit may be returned as denied to the sender without further investigation. No merit grievances include grievances that: (1) have previously been addressed for which there is no additional information."). While it is true that the Administrative Code contains this provision, the Court cannot locate a published decision concluding that a denial for this reason constitutes a failure to exhaust administrative remedies.

Defendants cite *Woodford v. Ngo,* 548 U.S. 81 (2006) for the proposition that the PLRA requires proper exhaustion, meaning exhaustion that complies with the procedural rules of the prison's local grievance procedure. In *Woodford,* the Supreme Court reversed the Ninth Circuit's finding that an inmate had done all that he could do exhaust where his grievance was rejected as untimely by the prison system. The *Woodford* Court discussed the holding extensively, reasoning that an inmate should not be able to orchestrate a situation where he can file a federal suit without using local exhaustion by failing to timely use the system or by waiting until the time to use the system had expired.

The Illinois Administrative Code section describing "no merit" grievances is as follows:

(a) Grievances shall be reviewed and a written response provided to the offender. Grievances on issues that are deemed without merit may be returned as denied to the sender without further investigation. No merit grievances include grievances that:
   (1) Have previously been addressed for which there is no additional information;
   (2) Are on issues that do not involve or affect the offender;
   (3) Are not timely, and for which good cause justification for the delay is not provided; or

(4) Are decisions previously rendered by the Director.

20 Ill. Admin. Code § 504.830(a)(1)-(4).  Under *Woodford*, it seems clear that a grievance rejected as lacking merit under § 504.830(a)(3) would be deemed non-exhausted under the PLRA.  But what about the other three provisions?

If a grievance is filed about something that does not involve or affect an offender, it also seems unlikely that the same offender would have standing to file a suit, so that provision likely does not matter much.  This leaves subsections 1 and 4.  The Court was unable to find much relevant authority on either subsection.  In *Barnwell v. Williams*, an inmate filed at least four grievances about cancer and healthcare issues.  2024 WL 4367688 (N.D. Ill. Oct. 1, 2024).  One was denied on the merits, two were deemed untimely, and a fourth was rejected because the contents was allegedly "not grievable."  The Court reasoned that a grievance about healthcare decisions was absolutely about a grievable issue given the bulk of authority in the circuit addressing the exhaustion of medical claims, and thus it concluded that the prison's rejection of the grievance as "not grievable" made the process unavailable.

Though not directly on point, in *Miles v. Anton*, 42 F.4th  777 (7th Cir. 2022), the Seventh Circuit considered whether the Indiana State Prison grievance process was available to an inmate to challenge his termination from a prison job.  The text of the grievance rules explicitly said that certain topics were not grievable, including classification actions or decisions such as the loss of a job.  The *Miles* Court concluded that the plain language of the prison's grievance rules made the grievance process unavailable for the loss of a prison job, and thus found that the inmate's suit about his job

loss should be allowed to proceed. The *Miles* decision suggests that where the prison's grievance rules categorically bar a type of grievance, then the grievance process is unavailable for PLRA exhaustion purposes, and the inmate may proceed with a suit in court. The *Miles* reasoning logically extends to grievances that a prison does not substantively address in reliance on § 504.830(c)(1) or (4).

The Defendants argue that Plaintiff did not fully and properly exhaust grievance K42-0724-1496, but the reason the grievance was rejected was that it was merely considered duplicative of earlier grievances. This response from prison officials is a refusal by officials to consider the substantive merit of the grievance, but it is not a refusal for procedural reasons (such as untimeliness or failing to use the required grievance form). Based on the analysis above and the holding in *Miles*, the Court finds that the grievance process was made unavailable for grievance K42-0724-1496, and thus Plaintiff did all that he could to exhaust the allegations contained in the grievance.

Based on grievances 23-0291 and K42-0724-1496, the Court finds that Plaintiff provided prison administrators with adequate notice of his claims. Thus, Defendants' Motion for Summary Judgment on the issue of exhaustion shall be denied.

### DISPOSITION

Defendants' Motion for an Extension to File the Motion for Summary Judgment (Doc. 49) is **GRANTED** instanter, the Motion was considered as timely filed, and Plaintiff responded. Plaintiff's Motion to File a Sur-Reply (Doc. 66) is **GRANTED**, and the sur-reply was considered. Defendants' Motion for Summary Judgment (Doc. 12) on the issue

of exhaustion of administrative remedies is **DENIED** in full.  Claim 1 may proceed on the merits against Defendants Dunlap, Osborne, and Yocum.

By contrast, **Claim 2** is now dismissed with prejudice because Plaintiff's release from prison mooted his ability to seek injunctive relief under RLUIPA against Warden Jennings.  The Clerk of Court shall **TERMINATE** Defendant Jennings, and judgment shall be entered in his favor at the close of this case.

**IT IS SO ORDERED.**

Dated: July 31, 2026

_____
DAVID W. DUGAN
United States District Judge